# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA
# COURT FILE NO.:

Nasira Rahmaan,

    Plaintiff,

v.

CSC Credit Services, Inc.;
Equifax Information Services, LLC;
Experian Information Solutions, Inc.;
Irwin Home Equity Corporation; and
Option One Mortgage Corporation;

    Defendants.

**COMPLAINT**
**WITH JURY TRIAL DEMAND**

## PRELIMINARY STATEMENT

1. This action for damages is based on Defendants' failures to follow reasonable procedures, failures to conduct reasonable investigations, and failures to block information appearing on Plaintiff's credit reports as a result of identity theft.

## PARTIES

2. Plaintiff Nasira Rahmaan is a natural person who resides in the city of Minneapolis, County of Hennepin, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

3. Defendant CSC Credit Services, Inc. ("CSC") is a credit bureau doing business in Minnesota and is a "consumer reporting agency" as that term is defined by 15 U.S.C.

§ 1681a(f).

4. Defendant Equifax Information Services, LLC ("Equifax") is a credit bureau doing business in Minnesota and is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

5. Defendant Experian Information Solutions, Inc. ("Experian") is a credit bureau doing business in Minnesota and is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

6. Defendant Irwin Home Equity Corporation ("Irwin") is a creditor doing business in Minnesota and is a "furnisher" as that term is used in 15 U.S.C. § 1681s-2.

7. Defendant Option One Mortgage Corporation ("Option One") is also a creditor doing business in Minnesota and is a "furnisher" as that term is used in 15 U.S.C. § 1681s-2.

## JURISDICTION AND VENUE

8. Because this case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., jurisdiction of this Court arises under 28 U.S.C. § 1331, and supplemental jurisdiction for state law claims arises under 28 U.S.C. § 1367.

9. Venue is proper in this Court because a substantial part of the claim arose in Minnesota, and all Defendants "reside" in Minnesota, as that term is used in 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

10. Plaintiff is a victim of identity theft.

11. The perpetrator of the identity theft, one Ida Mae James, a/k/a Aida James, Ida Bywaters, Ida Johnson, Aida Bywaters, and/or Aida Johnson ("James"), was a real estate agent, mortgage broker, and property manager.

12. Plaintiff met James several years ago at Faith Pentecostal Church.

13. In 2005, Plaintiff was living in her home at 4014 Thomas Ave. N, Minneapolis, where she and her young son had lived for several years.

14. Due to an illness, Plaintiff was having trouble meeting her financial obligations and asked James to help her resolve this issue, possibly by finding a smaller house with a correspondingly lower mortgage payment.

15. James collected personal data on Plaintiff, ostensibly to facilitate legitimate real estate purchases/sales.

16. Using that data, James then applied for and obtained loans/mortgages for multiple properties, as well as other credit, which she obtained in Plaintiff's name without Plaintiff's knowledge.

17. James manufactured and submitted false documentation in support of the applications and forged Plaintiff's signature on the application and purchase documents.

18. James, personally or through her businesses, pocketed broker fees from these transactions and rent payments from tenants at many of the properties.

19. In April 2006, Plaintiff filed a police report with the Minneapolis Police Department.

20. James, who had similarly stolen the identities of several other consumers, was prosecuted, and pled guilty to six counts of Identity Theft in State v. James, 27-CR-06-057686 (Hennepin Co., Minn.).

21. At about the same time that Plaintiff filed the police report, Plaintiff disputed to Defendants CSC and/or Equifax the appearance on her credit reports of numerous accounts stemming from the identity theft, including multiple Option One accounts.

22. The appearance of any Option One account on Plaintiff's credit reports was false.

23. Defendants CSC and Equifax share the same database.

24. CSC and Equifax are each responsible for following reasonable procedures to assure maximum possible accuracy whenever they prepare consumer reports from information in their shared database.

25. CSC and/or Equifax put Option One on notice of Plaintiff's dispute.

26. In the alternative, CSC and Equifax failed to send notice to Option One of Plaintiffs dispute.

27. Plaintiff received two different sets of investigation results and consumer disclosures dated June 16, 2006, from CSC.

28. On the first June 16, 2006, investigation results summary from CSC, bearing a code "9545," CSC stated that several of the accounts Plaintiff had disputed had

been deleted.

29. However, each account that CSC said it had deleted still appeared on the consumer disclosures accompanying both the first and the second June 16, 2006, investigation results summaries from CSC.

30. The first June 16, 2006, investigation results summary from CSC gave no indication that any Option One account had been investigated.

31. The second June 16, 2006 investigation results summary from CSC, bearing a code "9546," gave a different list of accounts CSC had supposedly investigated.

32. With respect to a Midland Mortgage account, CSC's second June 16, 2006, investigation results summary stated, "CSC verified that this item belongs to you."

33. However, no Midland Mortgage account appeared on the consumer disclosures accompanying either the first or the second June 16, 2006, investigation results summaries from CSC.

34. With respect to the Option One accounts, CSC's second June 16, 2006, investigation results summary stated, "CSC verified that this item belongs to you."

35. In a letter with enclosures that Plaintiff sent on February 21, 2007, Plaintiff disputed to Defendants CSC, Equifax, Experian and Irwin additional accounts that had shown up on her credit reports as a result of the identity theft, including an Irwin account.

36. The appearance of any Irwin account on Plaintiff's credit reports was false.

37. With her February 21, 2007, letter, Plaintiff enclosed appropriate proof of her

identity, including copies of the front and back of her driver's license and a recent utility bill.

38. With her February 21, 2007, letter, Plaintiff enclosed an ID Theft Affidavit.

39. In her February 21, 2007, ID Theft Affidavit, Plaintiff provided the names, telephone numbers and email addresses of the Minneapolis Police officer and Hennepin County attorney with whom she had been dealing.

40. In her February 21, 2007, ID Theft Affidavit, Plaintiff provided the name, address, telephone numbers and business name and address for the perpetrator, Ida James.

41. In her February 21, 2007, ID Theft Affidavit, Plaintiff indicated her willingness to cooperate in the prosecution of James.

42. With her February 21, 2007, letter, Plaintiff also enclosed a copy of the police report she had filed.

43. In her February 21, 2007, letter and in the enclosed ID Theft Affidavit, Plaintiff identified the information in her credit reports that she contented resulted from the identity theft.

44. In her February 21, 2007, letter, Plaintiff indicated that the disputed accounts did not relate to any transaction by Plaintiff.

45. With her February 21, 2007, letter, Plaintiff also enclosed a copy of a January 22, 2007, article from the Minneapolis Star Tribune about the identity thefts perpetrated by James.

46. The Star Tribune article provided additional facts about James and about her crime

spree, and provided the name of an additional police officer involved in the case.

47. CSC and Equifax failed to block the reporting of all the information Plaintiff identified in her February 21, 2007, letter as having resulted from the identity theft.

48. CSC and/or Equifax put Irwin on notice of Plaintiff's dispute.

49. In the alternative, CSC and Equifax failed to send notice to Irwin of Plaintiff's dispute.

50. Plaintiff received investigation results dated March 26, 2007, from CSC.

51. CSC's March 26, 2007, investigation results stated that CSC had investigated a Midland Mortgage account.

52. Plaintiff had not disputed any Midland Mortgage account, as no such account appeared on her credit reports after her prior disputes.

53. With respect to the Midland Mortgage account, CSC's March 26, 2007, investigation results summary stated, "CSC verified that this item belongs to you."

54. However, again no Midland Mortgage account appeared on the consumer disclosures accompanying CSC's March 26, 2007, investigation results summary.

55. With respect to the Irwin account, CSC's March 26, 2007, investigation results summary stated, "CSC verified that this item belongs to you."

56. Plaintiff also received investigation results dated April 3, 2007, from CSC.

57. With respect to a Homeq Servicing Corporation account, CSC's April 3, 2007, 2006, investigation results summary stated, "CSC verified that this item belongs to

you."

58. However, no Homeq Servicing Corporation account appeared on the consumer disclosure accompanying CSC's April 3, 2007, investigation results summary from CSC.

59. With respect to the Irwin account, CSC's April 3, 2007, investigation results summary stated, "CSC verified that this item belongs to you."

60. Experian also failed to block the reporting of all the information Plaintiff identified in her February 21, 2007, letter as having resulted from the identity theft.

61. Plaintiff received a letter from Experian dated March 2, 2007, in which Experian refused to block the information Plaintiff had identified as resulting from the identity theft.

62. Experian's March 2, 2007, letter stated that before Experian would block such information, Plaintiff had to send a report filed with a law enforcement agency, a copy of a government issued identification card, and a copy of a recent utility bill.

63. In her February 21, 2007, letter, Plaintiff had already sent Experian the report she had filed with a law enforcement agency, a copy of her government issued identification card, and a copy of her recent utility bill.

64. Experian put Irwin on notice of Plaintiff's February 21, 2007, dispute.

65. In the alternative, Experian failed to send notice to Irwin of Plaintiff's dispute.

66. Plaintiff received investigation results dated March 25, 2007, from Experian.

67. With respect to the Irwin account, Experian's March 25, 2007, investigation results summary stated, "If account was opened as a result of identity theft, the credit grantor may not know how to contact you to discuss this matter. The credit grantor requests that you contact them directly."

68. In her February 21, 2007, letter, Plaintiff already had contacted Irwin directly.

69. The Irwin account remained on Plaintiff's March 25, 2007, Experian credit report, with the indication, "Verified and updated on Mar 2007."

70. Due to Defendants' respective failures to conduct reasonable investigations of Plaintiff's disputes and their respective failures to properly report the results, the false appearance on Plaintiff's credit reports of accounts stemming from the identity theft were not appropriately deleted from Plaintiff's credit files.

71. From early 2006 to the present, Plaintiff disputed to various consumer reporting agencies the false appearance on Plaintiff's credit reports of accounts stemming from the identity theft numerous times, including without limitation the disputes specified herein.

72. In or around August 2007, Plaintiff was unable to obtain a loan from TCF Bank, due at least in substantial part to the false appearance on Plaintiff's credit reports of accounts stemming from the identity theft.

73. As a result of Defendants' actions and omissions, Plaintiff has suffered emotional distress and further actual damages, including without limitation the foregoing.

# CAUSES OF ACTION

### COUNT I:
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT,
### 15 U.S.C. §§ 1681c-2, 1681e(b), and 1681i,
### DEFENDANTS CSC, EQUIFAX, AND EXPERIAN

74. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

75. Defendants CSC, Equifax, and Experian willfully and/or negligently violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's consumer reports.

76. Defendants CSC, Equifax, and Experian willfully and/or negligently violated 15 U.S.C. § 1681i in multiple ways including without limitation by failing to conduct reasonable reinvestigations the information Plaintiff disputed and by failing to appropriately delete the information from Plaintiff's files thereafter.

77. Defendants CSC, Equifax, and Experian willfully and/or negligently violated 15 U.S.C. § 1681c-2 in multiple ways including without limitation by failing upon receiving appropriate documentation to block information identified by Plaintiff as resulting from identity theft.

78. As a result of CSC's, Equifax's, and Experian's violations of §§ 1681c-2, 1681e(b), and 1681i, Plaintiff has suffered actual damages including without limitation credit denials, out-of-pocket expenses, detriment to her credit rating, emotional distress, embarrassment, mental anguish, anxiety, and humiliation.  Plaintiff is

therefore entitled to recover actual damages pursuant to 15 U.S.C. §§ 1681n and 1681o.

79. CSC's, Equifax's, and Experian's conduct, actions and inactions were willful, rendering them liable for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

80. Plaintiff is entitled to recover costs and attorney fees from Defendants CSC, Equifax, and Experian pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT II:
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT,
## 15 U.S.C. § 1681s-2(b)
## DEFENDANTS OPTION ONE AND IRWIN

81. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

82. Defendants Option One and Irwin willfully and/or negligently violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation upon receiving notice of Plaintiff's dispute(s), failing to appropriately report the results of their investigations, and/or failing to appropriately modify, delete, and/or block the information.

83. As a result of Option One's and Irwin's violations of § 1681s-2(b), Plaintiff has suffered actual damages not limited to out-of-pocket expenses, detriment to her credit rating, emotional distress, embarrassment, mental anguish, anxiety, and

humiliation. Plaintiff is therefore entitled to recover actual damages under 15 U.S.C. §§ 1681n and 1681o.

84. Option One's and Irwin's conduct, actions and inaction were willful, rendering them liable for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

85. Plaintiff is entitled to recover costs and attorney fees from Option One and Irwin pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT III:
## CREDIT DEFAMATION
## ALL DEFENDANTS

86. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

87. Defendants' foregoing actions, including but not limited to reporting errors on Plaintiff's credit reports, constitute credit defamation.

88. Defendants' foregoing actions were intentional and malicious.

89. As a result of Defendants' intentional and malicious credit defamation, Plaintiff has suffered actual damages including without limitation credit denials, out-of-pocket expenses, detriment to her credit rating, emotional distress, embarrassment, mental anguish, anxiety, and humiliation.

## COUNT IV:
## NEGLIGENCE
## ALL DEFENDANTS

90. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

91. Defendants' foregoing actions and inactions constitute a breach of Defendants' duty to Plaintiff.

92. Defendants' foregoing actions were intentional and malicious.

93. As a result of Defendants' intentional and malicious negligence, Plaintiff has suffered actual damages including without limitation credit denials, out-of-pocket expenses, detriment to her credit rating, emotional distress, embarrassment, mental anguish, anxiety, and humiliation.

## **WHEREFORE,**

Plaintiff prays that judgment be entered against these Defendants for:

a.) Plaintiff's actual damages;

b.) Punitive and/or statutory damages pursuant to 15 U.S.C. § 1681n;

c.) Reasonable attorney's fees and costs pursuant to 15 U.S.C. §§ 1681n and/or 1681o.

d.) Such other and further relief as may be just and proper.

| | |
|---|---|
| Dated:   2/18/08 | **GOOLSBY LAW OFFICE, LLC**<br><br>By:   s/John H. Goolsby<br>John H. Goolsby, attorney ID # 0320201<br>2021 East Hennepin Avenue, Suite 195<br>Minneapolis, MN 55413<br>Telephone:  (612) 331-8700<br>jgoolsby@goolsbylawoffice.com<br>**Attorney for Plaintiff** |

# VERIFICATION OF COMPLAINT
# AND CERTIFICATION BY PLAINTIFF

STATE OF MINNESOTA        )
                          ) ss
COUNTY OF HENNEPIN        )

I, Nasira Rahmaan, having first been duly sworn and upon oath, depose and say as follows:

1. I am the Plaintiff in this civil proceeding.

2. I have read the above-entitled civil Complaint prepared by my attorney and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5. I am bringing this civil Complaint in good faith and solely for the purposes set forth in it.

                                                    s/Nasira Rahmaan
                                                  Nasira Rahmaan

Subscribed and sworn to before me

this 6th day of February, 2008.

      s/John H. Goolsby
Notary Public